UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 10-20812-CIV-HUCK/O'SULLIVAN

JEFFREY ROTH,

    Plaintiff,

vs.

ROBERT LAWRENCE, *et al.*,

    Defendants.

_____/

## ORDER ON MOTION TO DISMISS

Plaintiff Jeffrey Roth filed this action to recover for injuries arising from an alleged assault, battery and subsequent false arrest. The matter is presently before the Court on defendant Gansevoort South Hotel's motion to dismiss the battery count (D.E. # 15), defendant City of Miami Beach's motion to dismiss the battery count (D.E. # 13), and defendant Robert Lawrence's motion to dismiss counts charging false arrest and excessive force (D.E. # 14). For the following reasons, only the City's motion is granted.

## FACTS

On January 1, 2009, plaintiff Jeffrey Roth, a guest at the Gansevoort South Hotel in Miami, sought to reach his suite so as to speak with his wife regarding a family emergency. Thwarted by an overcrowded elevator filled with partygoers, Roth approached defendant Robert Lawrence, an off-duty Miami Beach police officer working as the Hotel's security guard, seeking his assistance. Roth alleges that Lawrence responded in a "nasty tone," pushed or threw him against a wall, repeatedly struck him, handcuffed him, and removed him to an abandoned parking lot where he was held until the decision was made to arrest him. All criminal charges against Roth were eventually dismissed.

Roth filed the instant action on February 26, 2010 against Lawrence, the Hotel, and the City of Miami Beach variously alleging battery and false arrest under state law and false arrest and excessive force under the federal civil rights law.

## **LEGAL ANALYSIS**

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). A complaint must contain enough "facts to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

**A. The Hotel's Motion to Dismiss**

The Hotel contends that Lawrence's actions as pled in the complaint conclusively establish that he was acting outside the scope of his employment with the Hotel, and thus preclude vicarious liability from attaching.

There is some subtle tension among authorities as to defining the scope of an employment under Florida law. The Eleventh Circuit instructs that Florida law provides that "[a]n employee's conduct is within the scope of his employment only if it is the kind he is employed to perform, it occurs substantially within the time and space limits of the employment and it was activated at least in part by a purpose to serve the master." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (quoting *Rabideau v. State*, 391 So. 2d 283, 284 (Fla. 1st DCA 1980), *aff'd*, 409 So. 2d 1045 (Fla. 1982)). The Florida Supreme Court, however, appears to articulate a seemingly broader standard that would sweep within its ambit more than merely conduct of "the kind" the employee is engaged to perform:

> an employer is liable in damages for the wrongful act of his employee that causes injury to another person, if the wrongful act is done while the employee is acting within the apparent scope of his authority as such employee to serve the interests of the employer, even though the wrongful act also constitutes a crime not a homicide or was not authorized by, or was forbidden by, the employer, or was not necessary or appropriate to serve the interests of the employer, unless the wrongful act of the employee was done to accomplish his own purposes, and not to serve the interests of the employer.

*Stinson v. Prevatt*, 94 So. 656, 657 (1922). The Eleventh Circuit thus focuses on the *kind* of conduct, while the Florida Supreme Court concerns itself primarily with the employee's *motivation*. This focal inconsistency is rather problematic in this case.

The Eleventh Circuit's conduct-centered standard itself admits of additional possibilities. In instructing lower courts to consider likeness of conduct to determine if an act is within the

scope of one's employment, is reference being made merely to the physical act in question, or to its surrounding factual and potentially justifying circumstances? The physical act of attacking and restraining an individual is one that both police officers and security guards are hired to perform. The contextual act–here characterized as unlawfully and unreasonably assaulting another–is certainly not one that any legitimate employer is likely to hire someone to perform. Which conception of the act, then, is relevant in analyzing likeness of kind–physical or contextual? The best view, suggested by the Restatement, is a hybrid approach that looks to both the act itself and its context. "To be within the scope of the employment, conduct must be of the same general nature as that authorized," and unauthorized conduct may be within the scope of employment if, *inter alia*, the act bears a "similarity in quality" to the authorized act. RESTATEMENT (SECOND) OF AGENCY § 229. Noting that "[a]n act may be within the scope of employment although consciously criminal or tortious," the Restatement limits that principle's breadth by recognizing that the severity of the criminal conduct can render it without the employment's scope:

> The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpected but in general are in nature different from what servants in a lawful occupation are expected to do.

RESTATEMENT (SECOND) OF AGENCY § 239 cmt. a. Thus, properly understood in light of the Restatement, the Eleventh Circuit's conduct-centered standard asks whether the tortious or criminal act (1) is "activated at least in part by a purpose to serve the master," (2) "occurs substantially within the time and space limits of the employment" and (3) is physically of the kind typically performed, in which case it will be considered within the scope of employment unless it is (4) "serious" enough given the surrounding circumstances such that it should be deemed "unexpected" and "in nature different" from activity conducted within the scope of employment.

       In the instant matter, it is unclear from the descriptive portion of the complaint what Lawrence's motivation might have been. Perhaps he was acting out of ill will toward the plaintiff. Maybe he was simply trying to counter what he considered a threat to the Hotel's security.

The Court, however, will apply the pleading standard as articulated by the Eleventh Circuit.  First, the conflict the standards is "soft;" that is, it is not apparent that the conflict arises from a rigid and principled difference of opinion, rather than the Florida Supreme Court's inadvertent failure to comprehensively consider and fully articulate its standard.  Second, the Eleventh Circuit has previously expressed qualms about relying on very old state supreme court opinions in light of recent state appellate court decisions to the contrary.[1]  *See Hardaway Ins. Co. v. Amwest Sur. Ins. Co.*, 986 F.2d 1395, 1401 (11th Cir. 1993) ("While we are bound to follow the decisions of a state's highest court when applying state law...we are reluctant to do so in this case, without first hearing from the Supreme Court of Georgia, because the decisions are extremely old and...a 1990 case coming out of the Georgia Court of Appeals, directly conflicts with the older Supreme Court of Georgia cases.").  Third, the intermediate state court decision that the Eleventh Circuit relied on was "affirmed and its opinion approved in its entirety." *Rabideau*, 409 So. 2d at 1045.  While not explicitly referring to the intermediate court's standard, this sweeping language arguably confers the Florida Supreme Court's imprimatur.  Fourth, the Eleventh Circuit's standard more accurately evaluates the scope of one's employment because, while focusing on conduct, it also considers motivation.

Applying the Eleventh Circuit's conduct-centered standard–as understood in light of the Restatement's explanation–the Court must consider whether the alleged unlawful act is a "serious" one "unexpectable" and "in nature different" from what security guards/attendants generally perform.  Such characterizations are plausibly (though not necessarily) inferred from the complaint, and are matters to be resolved on a more developed factual record.  *See Reyes v. City of Miami Beach*, No. 07-22680 (PCH), 2008 WL 686958, *4 (S.D. Fla. March 13, 2008) (denying motion to dismiss claim against police officer who allegedly grabbed plaintiff, handcuffed and threw her against a vehicle and later unprovokedly kicked her, as such facts could "be reasonably interpreted to support" a theory of malice or bad faith).  Accordingly, the Hotel's motion to dismiss is denied.[2]

---

[1] If the matter were simply a dispute between a state supreme court decision (uncontroverted within the state court system) and a federal appellate court on interpretation of state law, the Court would be bound to follow the state supreme court.

[2] The Hotel also contends that the battery count against it and the City is improper in that it simultaneously alleges that Lawrence was acting under color of state law and as the Hotel's

### B. City of Miami Beach's Motion to Dismiss

Defendant City of Miami Beach contends that the battery claim should be dismissed for (1) impermissibly combining state claims for battery against two different defendants within the same count, (2) lacking factual detail sufficient to determine if plaintiff is asserting "simple common law battery claims" or "claims for battery by a police officer, *i.e.*, excessive force," and (3) generally alleging that defendant Lawrence was employed by two employers and was acting within the scope of employment of both, rendering it "impossible to distinguish Plaintiff's claims against either Defendant."

Simple battery and battery by a law enforcement officer are torts consisting of different elements. *Compare City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (officers are only liable for damage where the force used is "clearly excessive") *with State v. Hearns*, 961 So. 2d 211, 218-219 (Fla. 2007) (any intentional touching, no matter how slight, is sufficient to constitute a simple battery). As such, the battery count is dismissed with leave to amend so that plaintiff can in separate counts specify, as to each defendant, which form of battery he is pursuing, thereby allowing defendants to distinguish between plaintiff's claims against the Hotel and the City and to address the appropriate standard in responsive pleadings.

### C. Lawrence's Motion to Dismiss

Defendant Robert Lawrence argues that the claims against him for false arrest and excessive force should be dismissed for failure to satisfy the heightened pleading standard required of claims seeking to pierce qualified immunity in § 1983 actions. Lawrence concedes that in evaluating claims of qualified immunity, a court must "ask whether the Complaint, taken in the light most favorable to the plaintiff, alleges facts which, if proven, would show that a police officer's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Lawrence also concedes that "a police officer's seizure, use of force, and arrest of a person for no reason whatsoever *could* constitute a constitutional violation." Lawrence contends, though, that Roth's complaint fails in that it "does not allege that he was cooperative, that he offered no resistance, that he did not attempt to flee or that he otherwise did not engage in conduct constituting breach of the peace or disorderly conduct."

---

employee. Roth, conceding this defect, has agreed to strike it, which suffices to dispose of the issue.

5

Lawrence's contention finds explicit support in the Fifth Circuit, which held that in the context of a § 1983 action, "the plaintiff must plead specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negative the defense of qualified immunity." *Brown v. Texas A & M Univ.*, 804 F.2d 327, 333 (5th Cir. 1986). The Fifth Circuit has not, however, explicitly held how extensive this negation exercise must be. Thus, it is possible that asserting a plausible case for overcoming immunity, even if it does not negate *every* possible counter-scenario, suffices. It is not necessary to address this issue, though, because this Circuit's controlling authority is to the contrary.

In the Eleventh Circuit, "a heightened standard applies to § 1983 cases against individuals who are eligible to claim qualified immunity." *Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179 (11th Cir. 2009). Nonetheless, and unlike the Fifth Circuit's doctrine, this "heightened pleading standard does not require a complaint to cite cases demonstrating that the defendant is not entitled to qualified immunity." *Id.* at 1180. *See also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense, the burden of pleading rests with the defendant... We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in the complaint that the defendant acted in bad faith."); *Thomas v. Independence Township*, 463 F.3d 285, 293 (3d Cir. 2006) (noting, with regard to qualified immunity, that the court does "not read [prior Supreme Court cases] as establishing an unprecedented rule of pleading requiring a plaintiff to set forth allegations negating an affirmative defense.").

An artful defendant asserting qualified immunity could conjure an endless list of facts– not explicitly negated by the plaintiff–which would tend to justify what initially appeared a violation of a clearly established right of which a reasonable person would have known. It is not a plaintiff's job in crafting the complaint to engage in such speculation and anticipate all such arguments. The defendant bears the burden of demonstrating entitlement to qualified immunity. The heightened pleading standard imposed in such cases merely provides that (1) the complaint must plead specific facts, not conclusions or a generic recitation of the elements of a claim, sufficient to plausibly allege a violation of a clearly established right of which a reasonable person would have known, and (2) the defendant may force the issue by affirmatively pleading qualified immunity and the specific circumstances which justify shifting the burden to the plaintiff, who would then be in a position to respond to actual–not imagined or otherwise speculative–contentions.

The question, then, is whether Roth has satisfied step (1) above. Difficulty arises in assessing whether the actions that Roth alleges Lawrence committed rise above the *de minimis* threshold below which qualified immunity attaches. *See Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir. 2003) ("the application of *de minimis* force, without more, will not support a claim for excessive force"). Roth claims that he was thrown against a wall, jumped on, and repeatedly struck once on the ground despite informing Lawrence about a heart condition. In *Sullivan v. City of Pembroke Pines*, the Eleventh Circuit affirmed that an officer's conduct involving grabbing a female arrestee's arm, pulling her arms behind her back, forcing her to the ground, placing his knee on her back and handcuffing her were *de miminis*. 161 Fed. Appx. 906, 910 (11th Cir. 2006). Similarly, in *Nolin v. Isbell*, where the plaintiff alleged that the officer had "grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head against the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him," the Eleventh Circuit found the force *de minimis*. 207 F.3d 1253, 1255 (11th Cir. 2000). In the instant matter, however, the Court finds that Lawrence's conduct as alleged exceeded the *de minimis* threshold, particularly because– unlike in *Sullivan* and *Nolin*–Roth was struck numerous times while he was on the ground. While it may be that Lawrence is able to muster evidence at a later stage in this proceeding indicating that such force was necessary to counter resistance, at this juncture, Roth has pleaded facts from which one can plausibly infer that the force used was excessive, particularly in light of the totality of the circumstances as alleged.

## **CONCLUSION**

For the foregoing reasons, the City's motion to dismiss is granted, and the plaintiff given leave to amend the battery count. All other motions are denied.

DONE and ORDERED in Chambers, Miami, Florida, May 26, 2010.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record